UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JODY A. GARRETT,

    Plaintiff,                                    Civil Action No. 08-10757

v.                                             HON. NANCY G. EDMUNDS
                                                 U.S. District Judge
                                                 HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL             U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Jody A. Garrett brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion for Summary Judgment DENIED.

## PROCEDURAL HISTORY

On August 3, 2004, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging an onset date of October 8, 2003 (Tr. 44). After the initial denial of her claim, Plaintiff made a timely request for an administrative hearing, held on February 21, 2007 in Flint, Michigan (Tr. 268). Administrative Law Judge ("ALJ") Ben S. Engelman

-1-

presided (Tr. 270). Plaintiff, represented by Mikel Lupisella testified, as did vocational expert ("VE") Judith Findora (Tr. 271-288, 289-293). On April 16, 2007, ALJ Engelman found that although Plaintiff was unable to perform any of her former jobs, she was capable of a significant range of other work (Tr. 22). On December 21, 2007, the Appeals Council denied review (Tr. 3-5). Plaintiff filed suit in this Court on February 25, 2008.

## BACKGROUND FACTS

Plaintiff, born October 11, 1958, was 48 at the time of the administrative decision (Tr. 22, 44). She completed high school and two semesters of college, working previously in multiple positions at Delphi (Tr. 79-97, 271). Plaintiff alleges disability as a result of pain and numbness in both hands (Tr. 71).

### A. Plaintiff's Testimony

Plaintiff testified that she currently received $588.49 in Workers' Compensation each week, adding that she had also applied for a disability pension (Tr. 271). She acknowledged possessing typing and computer skills (Tr. 79-97, 273). She reported that all of her job positions required constant standing and the repetitive use of both hands (Tr. 273-277). She alleged disability from hand pain and numbness, adding that she experienced greater limitation in her right hand (Tr. 277). Plaintiff alleged that on a scale of one to ten, repetitive activities created level four to five pain (Tr. 277-277). She admitted that she continued to perform minor household chores, care for her pets, and drive on a limited basis (Tr. 279).

Plaintiff reported that she currently received counseling and took Wellbutrin for stress and depression (Tr. 280). She added that her emotional condition was exacerbated by her

brother's cancer diagnosis in May 2006 (Tr. 280). Plaintiff opined that concentrational and emotional limitations would preclude work as either a security monitor or hostess, alleging that she experienced bouts of depression and stress at least once a week (Tr. 282-284). Plaintiff reported that she visited with her daughter, mother, grandmother, and brother on an occasional basis (Tr. 284).

Plaintiff testified that hand problems prevented her from typing for more than 10 minutes at a time (Tr. 285). She also reported difficulty opening jars and manipulating some buttons (Tr. 286). Plaintiff testified that she was unable to lift more than 10 pounds (Tr. 287). She concluded her testimony by stating that memory problems interfered with her reading comprehension (Tr. 287-288).

### B. Medical Evidence

#### 1. Treating Sources

A September 2001 electro diagnostic evaluation found the presence of bilateral carpal tunnel syndrome ("CTS"). Jose Mari G. Jurado, M.D., noting a "guarded" prognosis, recommended the use of wrist splints and the consideration of surgical options (Tr. 109). The following month, treatment notes by Sonya Cribbs, P.A., show that Plaintiff experienced bilateral CTS with cubital tunnel syndrome on the right (Tr. 129). August 2003 treating notes by Cribbs indicate that Plaintiff experienced situational depression due to financial problems and an ongoing divorce (Tr. 119, 121). In September 2003, an audiogram revealed "mixed" hearing loss in the left ear (Tr. 110). The same month, Cribbs noted that Plaintiff reported improvement after taking Wellbutrin and discontinuing Prozac (Tr. 118). The

following month, an EMG study show bilateral median nerve dysfunction "mild to moderate" on the left and "mild" on the right (Tr. 111).

In November 2003, Plaintiff sought a surgical consultation with Arno W. Weiss, Jr., reporting numbness and pain on a constant basis in both hands (Tr. 182). In December, 2003, Dr. Weiss performed a left carpal tunnel release without complications (Tr. 179-180). The following month, Plaintiff underwent a right carpal tunnel release (Tr. 176). Cribbs' March 2004 treating notes indicate that Plaintiff continued to be off work following the CTS surgery (Tr. 113). The same month, Plaintiff reported lessening symptoms of numbness in the right hand (Tr. 175). In April 2004, Ali A. Alhimini, M.D., noted that an EMG showed "a possible early ulnar neuropathy in the [right] hand" (Tr. 135). Also in April 2004, Dr. Weiss completed a form on behalf of Plaintiff's claim for long term disability, opining that Plaintiff was incapable of even sedentary work (Tr. 174). The following month, nerve conduction studies by Nathan L. Gross, M.D., also showed "right ulnar neuropathy" (Tr. 139). Also in May 2004, Dr. Weiss found the presence of "permanent nonreversible damage," opining that Plaintiff "cannot return to work at this point" (Tr. 173). In July 2004, Dr. Weiss commented that "[h]opefully [Plaintiff] will get her feeling back and some improvement in muscle strength and dexterity" (Tr. 172). In March 2005, Dr. Weiss opined that Plaintiff could go back to work, but was precluded from repetitive activities, vibration, and upper extremity pushing (Tr. 161). In June 2005, Dr. Weiss, noting that her employer "gave her disability and told her to go home," noted that "I personally don't think this lady should be on the disability pile" (Tr. 161).

In August 2005, nerve conduction studies by Edward B. Trachtman, D.O., showed "[d]iffuse slowing of multiple nerve impulses" possibly related to peripheral neuropathy (Tr. 159). In October 2005, Joel M. Beltran, D.O., ruled out "an underlying peripheral neuropathy" (Tr. 189). A November 2005 EMG study showed bilateral CTS "without ongoing denervation" (Tr. 186).

January 2006 treating notes by Dennis C. O'Connor, D.O., show that Plaintiff experienced uncontrolled hypertension and a depressive disorder, noting a prescription for Wellbutrin (Tr. 248). In March 2006, Plaintiff underwent occupational therapy (Tr. 226). Christina Davies, Occupational Therapist, found that Plaintiff's rehabilitation potential was "good" (Tr. 226-227). In April 2006, Plaintiff reported persistent crying, fatigue, and symptoms of hypothyroidism (Tr. 243). In June 2006, Dr. Beltran found that a nerve conduction study showed improvement, but Plaintiff reported to Dr. Weiss that she experienced renewed numbness and pain, exhibiting "a very positive Tinel's and Phalen's [sign]" (Tr. 205, 225). Occupational therapy discharge notes from the following month state that Plaintiff made only "minimal progress" in therapy (Tr. 222). In July 2006, Plaintiff sought emergency treatment for back spasms (Tr. 235). The same month, Plaintiff underwent a stress test (Tr. 261). Joseph Blair, M.D., noting hypertension and excessive weight, recommended a low dose of betablockers and continued monitoring for cardiovascular disease (Tr. 262). In August 2006, Dr. Weiss opined that "as far as [Plaintiff's] industrial work activity goes[,] she should be considered permanently disabled," adding that computer work or driving for prolonged periods was also precluded (Tr. 221).

Notes from a January 2007 psychiatric assessment by Sadrini B. Nagarkar M.D., indicate that Plaintiff exhibited a flat effect, reporting depression over her inability to work, deaths in the family, and her brother's diagnosis of cancer (Tr. 251). Dr. Nagarkar opined that Plaintiff's depression stemmed from "loss of functioning and loss of job," recommending an increased dosage of Wellbutrin (Tr. 251). Dr. Nagarkar opined that Plaintiff was at that time markedly limited in her ability to interact with supervisors and co-workers, carry out complex instructions, maintain concentration, and withstand customary "stress and pressures" associated with full time work (Tr. 253). Dr. Nagarkar found further that Plaintiff experienced moderate limitations in her ability to deal with the public, but only mild limitations in her ability to carry out one to two-step job instructions (Tr. 253).

### 2. Non-Treating Sources

A September 2004 Physical Residual Functional Capacity Assessment found that Plaintiff could lift 20 pounds occasionally and ten pounds frequently; sit, stand, or walk for up to six hours in an eight-hour workday; and had a limited ability to push or pull with the upper extremities and an unlimited ability in the lower (Tr. 142). Plaintiff was limited to *frequent* (as opposed to *constant*) balancing and *occasional* climbing, stooping, kneeling, crouching, and crawling (Tr. 143). Plaintiff's manipulative limitations consisted of *occasional* handling with the left hand and *frequent* with the right (Tr. 144). Plaintiff was also limited to *frequent* fingering in both hands (Tr. 144). The Assessment found the absence of visual and communicative limitations, with environmental limitations consisting of avoidance of unlimited vibration or hazards such as heights or machinery (Tr. 145). The

Assessment concluded by finding that Plaintiff's claims of limitation were credible (Tr. 146).

The same month, a Psychiatric Review Technique noted Plaintiff's symptoms of depression (Tr. 190, 193). Under the "B Criteria of the Listings," Plaintiff's activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace were deemed *mild* (Tr. 200). The Review also noted the absence of episodes of decompensation (Tr. 200).

### C. Vocational Expert Testimony

VE Findora classified all of Plaintiff's former jobs as unskilled with the exception of a semiskilled position in a simulation lab (Tr. 104, 289). She found that Plaintiff's former work had been performed at the light exertional level[1] (Tr. 104). The ALJ listed the following hypothetical limitations:

> "Let's assume we have a 48-year old [c]laimant with a work history as described, high school degree, two terms of college, limited to light work. . . . [O]ccasional use of hands. And rarely lifting over ten pounds. Even though it's light . . . these jobs may be done primarily standing."

(Tr. 289-290). The VE, noting that her findings were consistent with the information found in the Dictionary of Occupational Titles ("DOT"), testified that the individual could perform the unskilled, light work of a security guard (10,000 jobs in the regional economy); usher or

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

attendant (4,400); and counter clerk (2,000) (Tr. 290). The VE testified further that if Plaintiff were unable to stay on task for 30 percent of the workday as a result of concentrational limitations, she would be unable to perform any of the above jobs (Tr. 292). She found further that if psychological symptoms resulted in more than one absence each month, all work would be precluded (Tr. 292).

### D.     The ALJ's Decision

ALJ Engelman found that although Plaintiff experienced the severe impairments of CTS, hypertension, and depression, none of the conditions met or equaled an impairment listed in Appendix 1 Subpart P, Regulations No. 4. (Tr. 16).   He found that Plaintiff retained the  Residual Functional Capacity for

> "a significant range of unskilled, light work activity that allows for lifting and carrying up to twenty pounds and sitting, standing, or walking up to six hours during an[] eight-hour work day.  However, the claimant should avoid work activity that requires frequent use of the hands"

(Tr. 16).  Citing the VE's job findings, he determined that Plaintiff could perform the work of a security guard, usher/attendant, and counter clerk (Tr. 22).

ALJ Engelman found Plaintiff's allegations of disability "not entirely credible," citing evidence of "a fairly active and independent lifestyle" (Tr. 20).  He observed that Plaintiff admitted that she continued to "drive, attend church, work on the computer, cook, clean, shop and run errands without apparent difficulty" (Tr. 20).  He also noted that Plaintiff "submitted extensive, typed written notes" in support of her disability claim (Tr. 20).  The ALJ determined that Plaintiff's allegations of psychological limitations were undermined by her

failure to seek outpatient therapy until one month before the hearing (Tr. 20).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS[2]

Plaintiff, noting that the administrative opinion contains the finding that she experienced "moderate" limitations in concentration, persistence, or pace, argues that the hypothetical question did not account for these deficiencies, thus invalidating the VE's job findings. *Plaintiff's Brief*, 6-10; *Docket* #10 (*citing Varley v. Secretary of Health & Human*

---

[2]Any issue not raised directly by Plaintiff is deemed waived, pursuant to *U.S. v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002). *See also Young v. Secretary of Health & Human Services,* 925 Fed. 2d 146 (6th Cir. 1990).

*Services,* 820 F.2d 777, 779 (6th Cir. 1987)). Plaintiff also contends that the ALJ's rejection of Dr. Nagarkar's opinion that she experienced "marked" psychological impairments is based on an erroneous reading of the record. *Id*. at 11.

## The Hypothetical Question

### A. General Principles

A hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. *Varley, supra,* 820 F.2d at 779. More recently, *Webb v. Commissioner of Social Sec.*, 368 F.3d 629 (6th Cir. 2004) rejected the notion that an ALJ is required to list all of a claimant's maladies verbatim in the hypothetical question, nonetheless acknowledging that "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments." (internal citations omitted) *Id.* at 632 (*citing Varley, supra,* 820 F.2d at 779). *See also, Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001).

Case law from this district and elsewhere suggests that hypothetical limitations such as "unskilled work" may fail to account for "moderate" concentrational and pacing deficiencies. *Benton v. Commissioner of Social Sec.* 511 F.Supp.2d 842, 849 (E.D.Mich.,2007)(Roberts, J.); *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich. 2005)(Friedman, J.); *Newton v. Chater,* 92 F.3d 688, 695 (8th Cir. 1996); *McGuire v. Apfel,* 1999 WL 426035, 15 (D. Or. 1999).

### B. Substantial Evidence Supports the ALJ's Job Conclusions

Plaintiff, citing *Thomczek v. Chater*, 1996 WL 426247 (E.D. Mich. 1996)(Cohn, J.),

argues specifically that the hypothetical question did not account for her moderate concentrational limitations as stated in the administrative decision (Tr. 19-20, 289-290).

Admittedly, the hypothetical question itself omits any reference to psychological impairments (Tr. 289-290). However, after the VE made her job findings, the ALJ added the following hypothetical limitations:

> "Now we have to add to this something that's going to be hard for me to articulate, but I'll ask you for your best advice. There is a depression component to this case. And as the Claimant described, perhaps one day a week, at least a half an hour at a time she's unable to pay attention to what she's doing, lacks concentration. She has a mild memory deficit. That also happens when she's stressed. On occasion it could be all day."

(Tr. 291). The VE indicated that the inability to stay on task 30 percent of the workday would preclude working as a security guard, usher/attendant, or counter clerk (Tr. 292).

However, substantial evidence easily supports the conclusion that Plaintiff's psychological impairments would take her off task *less* than 30 percent of her workday. Plaintiff's own account of her daily activities, cited by the ALJ, stand at odds with the contention that she would be unable to concentrate for one third of her work time (Tr. 20). Plaintiff admitted that she routinely cared for her pets, cooked, "washed, [dried], folded, [and] put away laundry," groomed herself, read the newspaper, played cards, shopped, dined out, and visited with her extended family (Tr. 101-103). Although Plaintiff argues at present that concentrational problems prevent her from performing the jobs cited by the VE, her daily activity sheets from June, 2005 show that she retained the presence of mind to care for her underage nieces (including an eight-year-old) for the duration of a two-night/three-day

sleep- over (Tr. 101-103). Likewise, this argument is undermined by a February 2007 activity sheet showing a variety of activities. Plaintiff admitted that she cared for her pets, attended an out-of-town church services, shopped, surfed the web, watched movies, and sustained a romantic relationship (Tr. 105).

### C. Substantial Evidence Supports the Rejection of Dr. Nagarkar's Findings

Plaintiff also argues that the ALJ's analysis of Dr. Nagarkar's findings is tainted by the misinterpretation of record evidence. Plaintiff contends that the rejection of the treating physician's January 2007 findings contains the erroneous finding that she did not undergo "significant treatment or limitations prior to January 25, 2007." *Plaintiff's Brief* at 11[3].

Contrary to this argument, the ALJ's treating physician analysis reflects a fair summation of her treatment history:

> "[T]he objective clinical evidence demonstrates that the claimant's depression has remained essentially stable and that her functioning has not been significantly impaired. . . . [T]he record does not document any significant exacerbation of symptoms and no history of hospitalizations related to depression or any other mental health concern. . . . [T]he claimant's treatment history is rather brief in comparison to her other impairments and that she has only been seeking outpatient therapy since January 2007. . . . [T]he medical record prior to January of 2007 reveals no significant limitations related to depression."

(Tr. 20). Although Plaintiff takes issue with the ALJ's finding that she did not experience "significant limitation" regarding depression prior to January 2007, substantial evidence

---

[3]An ALJ's failure to explain his reasons for rejecting a treating physician's opinion constitutes reversible error. *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2)). Likewise, a treating physician analysis based on a misreading of record evidence provides grounds for remand.

supports this conclusion. In August 2003 PA Cribbs noted that Plaintiff experienced "situational" depression as a result of divorce proceedings and financial problems (Tr. 119, 121). However, the following month, Plaintiff reported improvement after taking Wellbutrin (Tr. 118). Cribbs' notes do not suggest that Plaintiff required therapy or other forms of psychological intervention. A September 2004 Psychiatric Review Technique found that Plaintiff's limitations as a result of depression were "mild" (Tr. 200). Treating notes created in January and April 2006 show that Plaintiff continued to take Wellbutrin for symptoms of depression, but do not suggest that Plaintiff experienced significant or prolonged functional limitations as a result (Tr. 243, 248). As discussed in Section **B**., Plaintiff's ongoing daily activities also support the ALJ's finding that her psychological limitations at this time were not significant.

Finally, I note that Plaintiff seizes on the"no significant limitations," finding in support of the proposition that the ALJ neglected to review her earlier treating records. However, the ALJ (in addition to citing record evidence showing that her functional limitations were minimal) did not overlook earlier reports of depressive symptoms, but instead simply noted that Plaintiff did not seek therapy until January 2007.

In closing, this Court's conclusion recommending the grant of summary judgment to the Commissioner is not intended to trivialize symptoms of depression or limitations created by CTS. The record easily establishes that if nothing else, CTS prevents Plaintiff from performing her former work. However, the overriding question in this appeal is whether the Commissioner's decision that Plaintiff was not disabled from *all* work was supported by

substantial evidence. Based on a review of this record as a whole, the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative level. Pursuant to *Mullen v. Bowen*, *supra*, the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: November 26, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 26, 2008.

S/G. Wilson<br>
Judicial Assistant